07-1211-ag
Garfield Aris v. Michael Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: December 21, 2007                    Decided: February 20, 2008)

Docket No. 07-1211-ag

_____

GARFIELD LIVERN ST. VALENTINE ARIS,

*Petitioner,*

—v.—

MICHAEL B. MUKASEY,[1]

*Respondent.*

_____

B e f o r e :

KATZMANN, PARKER, and RAGGI, *Circuit Judges.*

_____

Petition for review of a decision of the Board of Immigration Appeals (BIA) denying petitioner's motion to reopen deportation proceedings and rescind a deportation order entered *in absentia*.

Petition granted, order vacated, and case remanded.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales.

TANISHA L. MASSIE (Lewis J. Liman, Evan Criddle, Daniel E. Zipp, Anton A. Ware, *of counsel*), Cleary Gottlieb Steen & Hamilton LLP, New York, N.Y., *for Petitioner*.

RUSSELL J.E. VERBY, Senior Litigation Counsel, Office of Immigration Litigation (Peter D. Keisler, Assistant Attorney General, Barry J. Pettinato, Assistant Director, Office of Immigration Litigation, *of counsel*), Civil Division, U.S. Department of Justice, Washington, D.C., *for Respondent*.

———————

KATZMANN, *Circuit Judge*:

With disturbing frequency, this Court encounters evidence of ineffective representation by attorneys retained by immigrants seeking legal status in this country. We have previously indicated that ineffective assistance of counsel can constitute an "exceptional circumstance" warranting the reopening of a deportation order entered *in absentia*. *See Twum v. INS*, 411 F.3d 54, 59 n.4 (2d Cir. 2005). We write today to establish what we would have thought self-evident: A lawyer who misadvises his client concerning the date of an immigration hearing and then fails to inform the client of the deportation order entered *in absentia* (or the ramifications thereof) has provided ineffective assistance. We further clarify that such misadvice may constitute ineffective assistance of counsel even where it is supplied by a paralegal providing scheduling information on behalf of a lawyer.

Petitioner Garfield Livern St. Valentine Aris, a native and citizen of Jamaica, seeks review of a decision of the Board of Immigration Appeals ("BIA") denying his motion to rescind an order of deportation entered *in absentia* and reopen his deportation proceedings.[2]  *In re*

———————

[2]Under the current system, what were once known as "deportation" proceedings are now termed "removal" proceedings. Aris's case, however, arose under former § 242 of the

-2-

*Garfield Livern St. Valentine Aris*, No. A37 776 177 (BIA Feb. 26, 2007). The Immigration

Judge ("IJ"), Sandy Hom, ordered Aris deported on May 3, 1995, following his failure to appear

at the hearing scheduled for the previous day. *In re Garfield Livern St. Valentine Aris*, No. A37

776 177 (Immig. Ct. N.Y. City May 3, 1995). For the reasons set forth below, we grant the

petition, vacate the denial of petitioner's motion to reopen, and remand the case for further

proceedings consistent with this opinion.

## BACKGROUND

In 1983, at the age of twelve, Aris entered the United States as a lawful immigrant.

Aris's wife, daughter, stepdaughter, and mother all reside in the United States and are citizens of

this country. Aris financially supports his wife and stepdaughter. He has no close family

members in Jamaica.

On August 21, 1991, Aris was convicted after a guilty plea in the United States District

Court, Western District of New York of unlawful possession of cocaine in violation of 21 U.S.C.

§ 844(a). *United States v. Aris*, No. 91-00150-01 (MAT) (W.D.N.Y. Aug. 21, 1991). The

district court sentenced him to three years' probation and imposed a $1000 fine and a $25 special

assessment.

Sixteen months later, the Immigration and Naturalization Service ("INS") issued an order

to show cause charging that Aris was subject to deportation based on the 1991 cocaine

conviction pursuant to what was then § 241(a)(2)(B)(i) of the Immigration and Nationality Act

("INA"), 8 U.S.C. § 1251(a)(2)(B)(i) (1992) (current version at INA § 237(a)(2)(B)(i), 8 U.S.C.

§ 1227(a)(2)(B)(i)). After he received the order to show cause, Aris hired David Scheinfeld of

David Scheinfeld & Associates, PLLC to represent him in the immigration proceedings.

Immigration and Nationality Act, which governed deportation proceedings.

On April 15, 1994, accompanied by an associate from the firm, Aris attended a hearing before the IJ. Aris conceded deportability, and the IJ scheduled a hearing for May 2, 1995. In addition, the IJ granted Aris permission to apply for discretionary relief under former § 212(c) of the INA, 8 U.S.C. § 1182(c) (1994) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-597 (Sept. 30, 1996)), but required that Aris do so by the end of business that day.[3] Counsel failed to file the application for § 212(c) relief, which in and of itself likely constitutes ineffective assistance of counsel in light of the equities of Aris's case.[4] *See Rabiu v. INS*, 41 F.3d 879, 882-84 (2d Cir. 1994).

There is no real disagreement about the key facts of this case. On May 2, 1995, having heard nothing from his lawyer, Aris phoned the law firm to check the status of the hearing. Aris spoke to a paralegal at the office who told him something to the effect that the firm calendar did not indicate any hearing scheduled for that day and that no attorneys were available to speak with him. Aris states that he relied on this information and did not appear at the May 2, 1995

---

[3]Former § 212(c) of the INA gave the Attorney General discretion to grant a waiver of certain grounds of deportability to a subset of legal permanent residents. Section 212(c) was repealed in 1996 by IIRIRA, but § 212(c) relief remains available to aliens who pleaded guilty to certain crimes prior to the enactment of IIRIRA and who otherwise would have been eligible for that relief. *See INS v. St. Cyr*, 533 U.S. 289, 326 (2001); *see also Blake v. Carbone*, 489 F.3d 88, 93-99 (2d Cir. 2007).

[4]Although the issue is not before us on appeal and we cannot know what a fuller review of the record would yield, Aris would seem to have a compelling case for § 212(c) relief in light of the "social and humane considerations" of his case. *Douglas v. INS*, 28 F.3d 241, 243-44 (2d Cir. 1994) (quoting *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978)). The offense that triggered Aris's deportation proceeding was a relatively minor drug offense. Deporting Aris would separate him from his mother, daughter, step-daughter and wife and deliver him to a country where he has spent virtually no time since emigrating at the age of twelve and has no social or familial connections.

hearing.

Evidently, the paralegal subsequently telephoned the immigration court, learned there was in fact a hearing scheduled, and tried to obtain an adjournment. But by the time she reached the court, the determination had been made to deport Aris. No one from the law firm ever contacted Aris to inform him that the paralegal had been mistaken concerning the hearing date or that he had been ordered deported *in absentia*.

Aris did receive a letter, dated September 25, 1995, informing him that the INS had made arrangements for his deportation. Aris took the letter to a lawyer at the firm, who assured Aris that he would take care of everything.

That lawyer then filed a motion to reopen the deportation proceedings on November 7, 1995. In an affidavit, the lawyer stated that the date of Aris's hearing was not noted on the firm calendar and that the associate who initially represented Aris had subsequently left the firm. This calendar error explained the failure of counsel to appear at the May 2, 1995 hearing. Nowhere in the affidavit or other motion papers, however, did counsel convey that Aris had relied on the erroneous information relayed to him by the paralegal. The IJ promptly denied the motion. Counsel filed an appeal of the IJ's denial of the motion to reopen, which suffered from the same defect, and the BIA dismissed the appeal.

Aris's lawyers persisted in their failure to inform him of the status of the case. For nearly a decade, Aris lived under the mistaken belief that the law firm had resolved his immigration problems. This is apparent from the fact that, in 2004, Aris took initial steps toward applying for United States citizenship.

It was only on June 1, 2005, upon his arrest on the outstanding 1995 deportation order, that Aris learned that the deportation proceedings had not been resolved in his favor and that he

had been living in violation of a deportation order. Almost immediately, Aris obtained new counsel who proceeded to file a number of factually erroneous and legally flawed submissions on his behalf. None of these submissions discussed prior counsel's role in Aris's failure to appear at the May 2, 1995 deportation proceeding, and none achieved the desired result. All in all, Aris was detained for nine months. Without Aris's income from the two jobs he had worked, his wife and stepdaughter were unable to pay rent. They were evicted from the family apartment and left with no choice but to move to a homeless shelter.

At year's end, Aris's family, concerned about his representation, sought the assistance of attorneys at Cleary Gottlieb Steen & Hamilton LLP, who agreed to represent him *pro bono*. New counsel promptly investigated the various errors committed by Aris's prior counsel and filed disciplinary complaints against them with the New York and New Jersey bars. New counsel also collected the necessary documents and moved before the BIA to reopen Aris's deportation proceedings, rescind the order entered *in absentia*, and remand the case to the immigration court.[5]

Aris's motion alleged ineffective assistance of prior counsel. It finally explained for the first time that Aris failed to appear at the May 2, 1995 hearing because a paralegal at his first lawyer's office wrongly informed him that there was no hearing scheduled for that day.

In a decision dated February 26, 2007, the BIA denied Aris's motion, claiming that it had "already addressed the circumstances of his failure to appear" in a prior ruling.[6] The decision

---

[5]The diligence of Aris's counsel at Cleary Gottlieb, including Lewis Liman, Esq. and the advocate before this Court, Tanisha Massie, Esq., is commendable. We thank them for their service and encourage other attorneys to follow in their example.

[6]The BIA also stated that it lacked jurisdiction to hear the motion to reopen because it should have been filed with the IJ in the first instance. Even the government concedes that this rationale is "superfluous and unworthy of this Court's attention." Given the multiple motions

gave no indication that the BIA considered the new information that Aris neglected to appear at the May 2, 1995 hearing in reliance on erroneous advice from a paralegal at the firm representing him. Aris now petitions for review of that decision.

**DISCUSSION**

We review the BIA's denial of a motion to reopen for abuse of discretion. *See Twum*, 411 F.3d at 58. An abuse of discretion may be found where the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001) (internal citations omitted).

Under the version of the INA applicable to this case, an alien ordered deported *in absentia* may reopen the case by filing a motion within 180 days after the order of deportation "if the alien demonstrates that the failure to appear was because of exceptional circumstances." INA § 242B(c)(3)(A), 8 U.S.C. § 1252b(c)(3)(A) (1994) (current version at INA § 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C)). That provision defines exceptional circumstances as "circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." INA § 242B(f)(2), 8 U.S.C. § 1252b(f)(2) (1994) (amended and renumbered as INA § 240(e)(1), 8 U.S.C. § 1229a(e)(1)). We now join our sister circuits in concluding that, under BIA precedent applicable

---

previously filed in this case, the instant filing encompassed more than merely a motion to rescind an *in absentia* order. *Cf. Matter of Gonzalez-Lopez*, 20 I. & N. Dec. 644, 646 (BIA 1993). Indeed, the IJ and BIA explicitly advised Aris that only the BIA had jurisdiction to hear the instant motion.

-7-

to the pre-1996 version of the INA as well as its current iteration, a lawyer's inaccurate advice to his client concerning an immigration hearing date can constitute "exceptional circumstances" excusing the alien's failure to appear at a deportation hearing, *see In re Grijalva-Barrera*, 21 I. & N. Dec. 472, 474 (BIA 1996); *Galvez-Vergara v. Gonzales*, 484 F.3d 798, 801-02 (5th Cir. 2007); *Lo v. Ashcroft*, 341 F.3d 934, 937-38 (9th Cir. 2003), and meriting the reopening of an *in absentia* deportation order, *see Twum*, 411 F.3d at 59 n.4.[7]

The government acknowledges that the "only issue of consequence" in this appeal is whether the advice that Aris received from the first law firm representing him on May 2, 1995 constitutes ineffective assistance of counsel, justifying the reopening of this case.[8] The government does not meaningfully contest Aris's account of his conversation with the paralegal beyond noting some ambiguity in the record concerning whether the paralegal told Aris something akin to, "you do not have a hearing," or rather, "our records indicate that you do not have a hearing scheduled."

We conclude that any such ambiguity is immaterial, and we are troubled by the government's unwillingness at oral argument to recognize it as such. Even if the paralegal told Aris only that the firm records did not indicate a scheduled hearing, Aris, an immigrant with limited familiarity with American immigration law, acted reasonably when he relied on this information and concluded that he did not need to appear before the IJ. "One reason that

---

[7]The deadline for moving to reopen may be equitably tolled until the ineffective assistance of counsel "is, or should have been, discovered by a reasonable person in the situation." *Iavorski v. INS*, 232 F.3d 124, 134 (2d Cir. 2000). The government does not raise a due-diligence challenge to equitable tolling in this case.

[8]The government does not challenge that Aris has satisfied the evidentiary requirements established by the BIA for claims of ineffective assistance of counsel. *See Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988).

aliens . . . retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration proceedings so complicated." *Iturribarria v. INS*, 321 F.3d 889, 901 (9th Cir. 2003).

The BIA's February 26, 2007 opinion, moreover, did not discuss this evidence. The omission is striking in light of BIA precedent that misadvice from counsel concerning a petitioner's need to appear at a hearing constitutes exceptional circumstances warranting the reopening of a removal order entered *in absentia*. *See In re Grijalva-Barrera*, 21 I. & N. Dec. at 474. Because this evidence had not been presented earlier, neither the IJ nor the BIA had previously considered it. Accordingly, the BIA erred when it rested on its prior decisions in rejecting this claim. In not addressing the petitioner's new evidence of ineffective assistance or providing a rational explanation for its departure from its own precedent concerning when such ineffectiveness constitutes exceptional circumstances, the BIA abused its discretion. *See Douglas v. INS*, 28 F.3d at 243.

The importance of quality representation is especially acute to immigrants, a vulnerable population who come to this country searching for a better life, and who often arrive unfamiliar with our language and culture, in economic deprivation and in fear. In immigration matters, so much is at stake -- the right to remain in this country, to reunite a family, or to work. While binding Second Circuit precedent holds that aliens in deportation proceedings have "no specific right to counsel," the Fifth Amendment does require that such proceedings comport with due process of the law. *Jian Yun Zheng v. U.S. Dep't of Justice*, 409 F.3d 43, 46 (2d Cir. 2005). Because the attorney conduct described herein so clearly ran afoul of the standard embodied in *In re Grijalva-Barrera*, 21 I. & N. Dec. 472, we need not pursue the issue of due process. Nevertheless, given the disturbing pattern of ineffectiveness evidenced in the record in this case

-9-

(and, with alarming frequency, in other immigration cases before us), we reiterate that due process concerns may arise when retained counsel provides representation in an immigration proceeding that falls so far short of professional duties as to "impinge[] upon the fundamental fairness of the hearing." *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 241 (2d Cir. 1992).

Members of the bar enjoy a monopoly on legal practice, "a professionalized system designed in large part around [their] needs." David Luban, *Lawyers and Justice* 286 (1988). And for that reason, among others, lawyers have a duty to render competent services to their clients. *See* Robert W. Gordon, *The Independence of Lawyers*, 68 B.U. L. Rev. 1, 6 (1988) ("These freedoms are usually analyzed as part of a social bargain: they are public privileges awarded in exchange for public benefits."). When lawyers representing immigrants fail to live up to their professional obligations, it is all too often the immigrants they represent who suffer the consequences. *See generally* Robert A. Katzmann, *The Legal Profession and the Unmet Needs of the Immigrant Poor*, 21 Geo. J. Legal Ethics 3, 8 (2008).

We appreciate that, unfortunately, calendar mishaps will from time to time occur. *See, e.g.*, *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc). But the failure to communicate such mistakes, once discovered, to the client, and to take all necessary steps to correct them is more than regrettable -- it is unacceptable. It is nondisclosure that turns the ineffective assistance of a mere scheduling error into more serious malpractice. *See generally* Lisa G. Lerman, *Lying to Clients*, 138 U. Pa. L. Rev. 659, 725 (1990).

In sum, to the extent there was any uncertainty, we hold today that the logic of *In re Grijalva-Barrerra* applies with equal force where the communication at issue involves the incorrect -- and uncorrected -- advice of a paralegal speaking on behalf of an attorney as to the scheduling of an immigration hearing. In addition, *In re Grijalva-Barrerra* applies to comments,

such as the one at issue in the instant case, concerning whether or not a hearing appears on the law firm's official schedule.

Mr. Aris's prior attorneys failed spectacularly to honor their professional obligation to him and to the legal system they were duty-bound to serve. Governmental authorities, whatever their roles, must be attentive to such lapses that so grievously undermine the administration of justice. Accordingly, we remand so Aris may have his § 212(c) application considered on the merits.

CONCLUSION

For the reasons set forth above, we GRANT the petition for review, VACATE the decision of the BIA and REMAND this case for further proceedings consistent with this opinion.