07-9054-am
In re Amy Gell

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of December, two thousand ten.

PRESENT:

José A. Cabranes,
Robert D. Sack,
Richard C. Wesley,
        *Circuit Judges.*

_____

|  |  |
|---|---|
| In re Amy Gell, also known as<br>Amy Nussbaum, | 07-9054-am |
| Attorney. | **ORDER OF<br>GRIEVANCE PANEL** |

_____

FOR AMY GELL:     Richard M. Maltz, Esq., New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and AMY GELL, also known as AMY NUSSBAUM, is PUBLICLY REPRIMANDED for the misconduct

described in the Committee's report.

By order filed in August 2007, this Court referred Amy Gell to the Committee for investigation of the matters described in that order and preparation of a report on whether she should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Gell had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in October, November, and December 2008. Gell was represented during the Committee's proceedings by Richard M. Maltz, Esq. Presiding over the hearing were Committee members Deirdre M. Daly, Esq., Evan A. Davis, Esq., and David B. Fein, Esq. In May 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Gell with a copy of the Committee's report, and Gell responded.

In its report, the Committee concluded that there was clear and convincing evidence that Gell had engaged in conduct warranting the imposition of discipline. Report at 1, 12. Specifically, the Committee found that Gell had intentionally failed to comply with the Court's scheduling orders, resulting in the dismissal of a substantial number of cases, and had practiced in this Court prior to her admission to the Court's bar. *Id.* at 12. Regarding the default dismissals, the Committee noted Gell's testimony that she had made a strategic decision to default in the belief that it was

2

in the best interest of her clients:

> Having lost contact with many of these clients, she could not get their consent to withdraw the appeal. Moreover, her experience was that if the case went into default, there remained an opportunity to pursue alternative relief at a later date either in immigration court or the Second Circuit, whereas if they withdrew the appeal, that opportunity would most likely be lost. ... [Gell] also testified that withdrawing as counsel was not a viable option as it would require disclosure of the client's address and thus risk an arrest. Although there was no testimony regarding individual defaulted cases, [Gell] stated that she is confident that the petitioners were helped rather than prejudiced by the defaults.

*Id.* at 8.

The Committee found that various aggravating factors existed: (1) Gell had engaged in a pattern of misconduct, which was considered more serious since it was intentional; (2) she had committed multiple offenses by filing petitions when she was not admitted to the Court and then systematically violating scheduling orders; (3) she is an experienced practitioner, having practiced for over twenty years, who should have recognized and addressed her misconduct; and (4) her immigrant clients were vulnerable victims. Report at 12, citing American Bar Association, Standards for Imposing Lawyer Sanctions ("ABA Standards") § 9.22(c), (d), (h), (i) (1986, amended 1992).

The Committee also found that Gell's two prior admonitions, imposed by the New York State Appellate Division, First Department, constituted an aggravating factor. Report at 12-13, citing ABA Standards § 9.22(a). In 2004, she was personally admonished for

missing a hearing that resulted in a deportation order for her client, intentionally failing to move to reopen the hearing, and failing to communicate with her client regarding her strategic decision to delay moving to reopen. *Id.* at 11, 13. In 2006, her firm was admonished for failing to file a brief in a case in this Court, for which Gell accepted responsibility as she had supervisory responsibility for the case. *Id.* at 11-12, 12-13.

The Committee also found several mitigating factors: (1) Gell conveyed a genuine commitment to her clients' best interests, including frequently working for non-responsive clients and clients who did not pay their fees, evidencing the absence of a dishonest or selfish motive; (2) she testified about certain medical issues that arose during the time of the first admonishment; (3) she was generally forthcoming and cooperative with the Committee's investigation; (4) she expressed credible remorse for her misconduct; (5) she has taken good faith steps to prevent any recurrences by significantly limiting her caseload and committing to a diligent monitoring of Court deadlines; (6) she appears to be a committed practitioner who did quality work for many clients despite challenging situations; and (7) she appears to be well regarded in the legal immigration community, as she worked for the Lawyers Community for Human Rights and has acted as the chairperson of the Federal Bar Association's immigration law committee. Report at 13, citing ABA Standards § 9.32(b), (c), (d), (e), (g), (l).

The Committee also considered Gell's argument that her conduct did not prejudice any clients, as some of the dismissed cases were reinstated, and other defaults were part of her strategy to create time to pursue more advantageous forms of relief. *Id.* However, the Committee found that, without reviewing the merits of each case, it could not conclude that none of the clients whose petitions were dismissed on default had suffered any prejudice. *Id.* The Committee also found that a lack of prejudice to clients would not excuse Gell's disregard of court orders, and the resulting burden on the Court and its staff. *Id.* The Committee recommended that Gell be publicly reprimanded and subject to certain reporting requirements. *Id.* at 13-14.

In her response to the Committee's report, Gell requested that a private, rather than public, reprimand be issued, that the reprimand language suggested by the Committee be modified, and that aspects of the recommended reporting requirements be clarified.

## I. Practicing Prior to Admission to Court's Bar

This Court's docket reflects that Gell began filing documents in this Court at least as early as March 2005. *See Singh v. Gonzales*, 05-1054-ag, acknowledgment letter filed Mar. 29, 2005; *Singh v. Gonzales*, 05-1606-ag, acknowledgment letter filed Apr. 14, 2005; *Mostafa v. Gonzales*, 05-2211-ag, acknowledgment letter filed May 25, 2005, motion filed July 11, 2005; *Afzal v. Gonzales*, 05-3336-ag, petition for review filed June 23, 2005; *Amin v. Gonzales*,

5

05-2751-ag, motion filed July 29, 2005. Her initial application to join the bar of this Court was thereafter filed in August or September of 2005 (although the application later had to be resubmitted, due to the absence of a sponsorship letter). Dec. 3, 2008 Transcript at 230-31. At a later date – probably in early 2006 – Gell was informed by an associate in her firm ("the Gell associate") that a Court employee had told her that an attorney did not need to be admitted to file a petition or brief, but only if the attorney intended to orally argue the case.[1] Dec. 3, 2008 Transcript at 219-22 (Gell associate's testimony concerning conversation with Court employee); Oct. 23, 2008 Transcript at 100 (Gell testimony); Dec. 11, 2008 Transcript at 5-6 (same).[2]

---

[1] The Court employee's advice may have been limited to Gell's ability to sign briefs after her admission application was submitted, but before her actual admission. Nov. 3, 2008 Transcript at 66-67, 69 (Gell's testimony); Dec. 3, 2008 Transcript at 230 (Gell associate's testimony). In light of other evidence discussed in the text, we assume the advice was not limited in that fashion (an assumption that favors Gell).

[2] The Gell associate first testified that her conversation with the Court employee likely had occurred in 2004 or 2005, Dec. 3, 2008 Transcript at 220-21, but later recalled that it had occurred in 2006, id. at 224, 227. Gell testified that she thought that the conversation had occurred in 2006, although she left open the possibility that it had occurred in 2005. Dec. 11, 2008 Transcript at 5-6. Early 2006 appears likely as (a) the Gell associate testified that her inquiry had been motivated by the scheduling of oral argument in Paul v. Ashcroft, 03-4807-ag, (b) the scheduling notice for that argument was mailed on February 1, 2006, see Paul, 03-4807-ag, notice filed Feb. 1, 2006, and (c) a February 27, 2006 letter notifying the Clerk that Gell would appear for oral argument in that case stated that Gell had submitted an application for admission to the Court's bar but had not yet received a decision on that application, see id.,

Finally, as of the October 23, 2008 hearing, an attorney who often worked for Gell was still under the belief that an attorney need not be admitted to this Court's bar in order to file a petition for review.  Oct. 23, 2008 Transcript at 55.

Prior to January 1, 2010, this Court's rule concerning admission to the Court's bar stated the following:

> Counsel of record for all parties must be admitted to practice before this court.  Oral argument may be presented only by attorneys admitted to practice before this court.

Former Second Cir. Local Rule 46(d).  We are informed that, during the time period relevant to the present proceeding, some employees of this Court had interpreted this rule to mean that an attorney litigating before this Court need not be admitted to the bar of this Court unless he or she intended to orally argue the case.  This interpretation is consistent with both the Gell associate's testimony about receiving such advice from a Court employee in 2006 and an affidavit prepared by a legal assistant to Gell's counsel, asserting that a Court employee had informed the legal assistant in October 2008 "that an attorney d[id] not have to be admitted to the Second Circuit to sign a brief but the attorney must be admitted for oral argument."  Record, vol. 6, exh. M.

We agree with the Committee that, prior to filing any document in this Court, Gell should have read this Court's local rule

letter filed Feb. 28, 2006.  However, we need not determine the precise date for purposes of this decision.

7

governing practice before this Court, Former Local Rule 46(d), and that she violated that rule by filing documents without first being admitted to this Court's bar or having an application pending. However, there are several mitigating factors. First, although Gell should not have relied exclusively on the advice of other attorneys, the existence of that advice offers at least partial mitigation. This is particularly true as to the advice the Gell associate obtained from a Court employee. Although some may argue that the proffered advice was not the best interpretation of the rule, we find that a reasonable attorney could have accepted, and acted upon, such advice from the Court. However, that mitigating factor does not apply to the time period preceding the Gell associate's conversation with the Court employee. Second, no evidence was adduced suggesting that Gell had intentionally violated this Court's admission rule or that any client or the public was prejudiced by Gell's failure to seek admission. Third, while the Court was prejudiced by having its admission rules circumvented, and not receiving the applicable admission fee in 2005, the Court's operations were not otherwise affected and Gell later became a member of the Court's bar. Thus, while we agree that Gell erred in not seeking admission prior to filing documents in this Court, we conclude that her error did not constitute

substantial misconduct.[3]

## II. Defaults

### A. Defaults Between March 2008 and November 3, 2008

At the November 3, 2008 session of the Committee's hearing, Gell expressed her belief that no defaults had occurred in her cases after she received the Committee's March 2008 order putting her on notice of the present proceeding. Nov. 3, 2008 Transcript

---

[3] The current attorney admission rule states that an attorney appearing in this Court "on behalf of a party or an amicus curiae in any capacity must be admitted to practice before this court, ... have pending an application for admission, [or be admitted *pro hac vice*,] and must file a Notice of Appearance in accordance with LR 12.3." Second Cir. Local Rule 46.1(a); *see* Local Rule 12.3(a) ("Within 14 days after receiving a docketing notice from the circuit clerk assigning a docket number ..., all parties must file the Acknowledgment and Notice of Appearance Form. Counsel of record listed on the form must be admitted in this court, or have pending an application for admission under LR 46.1(a) or (d)."); Local Rule 12.3(b)("An attorney, other than the initial counsel of record, who appears in a case in any capacity on behalf of a party or an amicus curiae must file the Notice of Appearance Form for Substitute, Additional, or Amicus Counsel at the time the attorney enters the case."). An attorney "appears" in this Court when, for example, he or she files, or permits the filing of, a petition, motion, brief, or other request for relief bearing the attorney's signature. *See* Fed. R. App. P. 32(d) ("Every brief, motion, or other paper filed with the court must be signed by the party filing the paper or, if the party is represented, by one of the party's attorneys."); *see, e.g.*, *Chums, Ltd. v. Always in Mind, Inc.*, 110 F.3d 67, 1997 WL 133267 at *2 (9th Cir. 1997) (unpublished decision) ("Generally, an attorney may appear on behalf of a party by either filing a formal notice of appearance or filing pleadings on behalf of that party."); *In re Jacobson*, 402 B.R. 359, 364 (Bankr. W.D. Wash. 2009)(stating that local rule permits attorney to enter appearance by signing any pleading or other document described in Fed. R. Civ. P. 5(a) or by filing notice of appearance); *In re Stauffer*, 378 B.R. 333, 336 n.2 (Bankr. D. Utah 2006)(describing similar local rule).

at 123.  She also stated that, after the receipt of that order, all of her briefs were timely filed, with the exception of one brief that was filed approximately ten days late.  *Id.; accord* Dec. 11, 2008 Transcript at 21 (Gell testimony that she is "taking far fewer Second Circuit cases now," "completely supervising them and doing the work," "watching everything that happens in those cases," and "complying with every court order").  While review of the Court's docket indicates that none of Gell's cases have been *dismissed* on default after March 2008, it also reveals that defaults did, in fact, occur after that date.  Specifically, contrary to her November 3, 2008 testimony, Gell defaulted between March 2008 and the date of that testimony, or continued a prior default into that period, in the following five cases.

1.  In *Singh v. Keisler*, 07-4975-ag, Gell's brief was due by April 2, 2008.  *See Singh*, 07-4975-ag, order filed Mar. 3, 2008. On April 23, 2008, the Clerk's Office issued an order to show cause why the case should not be dismissed based on Gell's failure to file a brief, with a response required by May 7, 2008.  *See id.*, order filed Apr. 23, 2008.  On April 24, 2008, the brief was served and filed.  *See id.*, brief filed Apr. 24, 2008 (cert. of service, noting Apr. 24, 2008 mailing).

2.  In *Benabdi v. Mukasey,* 07-5138-ag, Gell's brief was due by February 19, 2008.  *See Benabdi,* 07-5138-ag, order filed Jan. 14, 2008.  On March 26, 2008, the Clerk's Office issued an order to

show cause why the case should not be dismissed based on Gell's failure to file her brief, with a response required by April 14, 2008. *See id.*, order filed Mar. 26, 2008. Gell did not submit the brief until April 22, 2008, *see id.*, brief filed Apr. 22, 2008 (cert. of service, noting Apr. 21, 2008 service on Court); however, the submission was deemed defective because Gell's motion to file late was not properly supported, *see id.*, second "notice of defective filing" filed Apr. 23, 2008. The corrected motion was filed on May 2, 2008, and the motion to file the late brief was granted. *See id.*, motion filed May 2, 2008, order filed May 9, 2008.

3. In *Mirza v. Mukasey*, 07-5298-ag, Gell's brief was due by February 25, 2008. *See Mirza*, 07-5298-ag, order filed Jan. 24, 2008. On March 24, 2008, the Court ordered Gell to show cause why the case should not be dismissed based on her failure to file a brief. *See id.*, order filed Mar. 24, 2008. On that same day, Gell requested that she given until April 1, 2008 to file the brief; she was given until April 8, 2008. *See id.*, motion and response filed Mar. 26, 2008, order filed Apr. 1, 2008. However, Gell submitted her brief and joint appendix one day late, on April 9, 2008, *see id.*, entry for Apr. 9, 2008, brief filed May 2, 2008 (cert. of service, noting Apr. 9, 2008 service on Court), and the docket indicates that the submission was defective because no special appendix had been received, *id.*, case manager notations at Apr. 10

11

and 17, 2008.  The special appendix was not received until May 2, 2008, at which time the brief and appendices were filed.  *See id.*, brief and appendices filed May 2, 2008.

**4.**  In *Azam v. Mukasey*, 08-0344-ag, Gell's brief was due by April 21, 2008.  *See Azam*, 08-0344-ag, order filed Mar. 20, 2008.  One day after that deadline, Gell requested an extension of time.  *See id.*, motion filed Apr. 22, 2008 (cert. of service, noting Apr. 22, 2008 service on Court).  The request was granted and her brief was then due by May 21, 2008.  *See id.*, order filed Apr. 22, 2008.  Although the brief was received by the Clerk's Office on May 21, 2008, Gell was informed that a special appendix was required.  *See id.*, entries for May 21 and 22, 2008.  The special appendix was filed on May 22, 2008, at which time the brief and appendices were filed.  *See id.*, entries for May 22, 2008.

**5.**  In *Kaur v. Mukasey*, 08-3079-ag, Gell was ordered to show cause why the case should not be dismissed based on Gell's failure to timely file Form C/A, with a response required by August 11, 2008.  *See Kaur*, 08-3079-ag, order filed July 25, 2008.  On August 11, 2008, Gell moved to withdraw the petition for review, which was granted.  *See id.*, motion filed Aug. 11, 2008, order filed Aug. 12, 2008.

**B.  Defaults Occurring After November 3, 2008**

Defaults also occurred after the November 3, 2008 session of the Committee's hearing in the following five cases.

12

**1.** In *Tazu v. Holder*, 09-2520-ag, after receiving two extensions, Gell's brief was due by December 23, 2009. *See Tazu*, 09-2520-ag, order filed Dec 17, 2009. However, Gell's brief was not submitted to the Court until January 6, 2010. *See id.*, entry for Jan. 6, 2010, brief filed Jan. 13, 2010 (cert. of service, noting Jan. 6, 2010 service on Court).

**2.** In *Asif v. Holder*, 08-4870-ag, after receiving two extensions, Gell's brief was due by April 25, 2009. *See Asif*, 08-4870-ag, order filed Apr. 1, 2009. However, she failed to comply and, on May 7, 2009, she was ordered to show cause why the case should not be dismissed based on her default, with a response required by May 21, 2009. *See id.*, order filed May 7, 2009. On May 22, 2009, her brief was filed. *See id.*, brief filed May 22, 2009. Although the certificate of service for the brief indicates that the Court was personally served on May 21, 2009, *see id.*, at cert. of service, the docket shows receipt on May 22, 2009.

**3.** In *Amekoudji v. Holder*, 08-5078-ag, Gell was ordered to show cause why the case should not be dismissed based on her failure to timely file Form C/A, with a response required by December 5, 2008. *See Amekoudji*, 08-5078-ag, order filed Nov. 13, 2008. Gell timely responded and filed the form, and her brief was then due by March 23, 2009. *See id.*, entries for Dec. 5, 2008. On April 7, 2009, Gell was ordered to show cause why the case should not be dismissed based on her failure to file her brief, with a

13

response required by April 21, 2009. *See id.,* order filed Apr. 7, 2009. She responded on April 21, 2009, but was notified that she had failed to file a necessary form. *See id.,* entry for Apr. 27, 2009. On May 1, 2009, the Court again requested the missing form. *See id.,* entry for May 1, 2009. On May 5, 2009, Gell moved to have the Court accept her late-filed brief and appendix. *See id.,* entries for May 5 and 7, 2009. The Court granted her motion and the brief and appendices were filed as of May 12, 2009. *See id.,* entries for May 12, 2009. Three weeks later, however, Gell moved to file an amended brief, due to "numerous typographical errors, page cites errors, case page reference cites and other mistakes in the [original] brief that resulted from an earlier version ... being ... used as the final version." *Id.,* motion filed June 3, 2009. The Court granted the motion and the amended brief was filed. *See id.,* order and amended brief filed on June 5, 2009.

4. In *Azad v. Holder*, 09-2066-ag, Gell's brief was due by September 7, 2009. *See Azad,* 09-2066-ag, order filed July 7, 2009. It was not submitted until September 8, 2009. *See id.,* entries for Sept. 8, 2009, brief filed Sept. 8, 2009 (cert. of service, noting Sept. 8, 2008 service).

5. In *Sarker v. Mukasey*, 08-5190-ag, Gell was required to file form C/A by November 3, 2008, but did not do so until November 6, 2008. *See Sarker,* 08-5190-ag, entries for Oct. 27 and Nov. 6, 2008. After receiving an extension of time, Gell's brief was then

14

due by March 2, 2009.  *See id.,* order filed Feb. 4, 2009.  However, the brief was not submitted until March 5, 2009.  *See* entries for Mar. 5, 2009, brief filed Mar. 5, 2009 (cert. of service, noting Mar. 4, 2009 service on Court).

Gell's November 3 and December 11, 2008 testimony before the Committee suggests a possible misunderstanding of what constitutes a default and, therefore, a possible misunderstanding of her obligations.  The defaults for which Gell was responsible are clearly reflected in this Court's records.  A "default" occurs when an attorney or litigant fails to file a required document by the deadline specified in an order or rule of this Court.  An attorney who cannot comply with such deadlines must seek – prior to the deadline – an extension of time, a stay of proceedings, withdrawal as counsel, withdrawal of the case, or guidance from the Court.  Requesting such relief after the deadline has passed is justified only under unusual circumstances.  The fact that, in a particular case, dismissal did not result from a default, or the Court permitted the filing of a document after the deadline, does not mean that a default did not occur.  While none of Gell's cases have been dismissed on default since March 2008, it is our hope that she will make further improvements by reducing or eliminating the number of defaults.[4]

---

[4] Gell also has continued to default in the Third Circuit. From October 2008 through September 2010, the Third Circuit has dismissed four petitions for review due to Gell's failure to file

15

## III.  Aggravating Factors

### A.  Prior Admonition

We agree with Gell that, since one of the First Department admonitions concerned a default that was covered by this Court's August 2007 referral order, it should not be treated as both misconduct directly redressable in this proceeding and an independent aggravating factor.  However, we disagree with her arguments concerning other aggravating factors.

### B.  Pattern of Misconduct

While Gell may have been unaware that her default strategy was improper, it nonetheless qualified as a pattern of misconduct. Each default presented Gell with a new opportunity to assess the reasonableness of her conduct, as evidence accumulated that her default strategy, at the very least, imposed additional burdens on

briefs or required forms.  *See Sukhdev Singh v. Attorney General*, 08-3380, dismissal order filed Nov. 06, 2008 (brief due by Oct. 22, 2008); *Finda Chokpelleh v. Attorney General*, 08-4284, dismissal order filed Dec. 16, 2008(forms due by Nov. 28, 2008); *Harjeet Singh v. Attorney General*, 09-2162, dismissal order filed March 23, 2010 (brief due by Nov. 30, 2009); *Shahzeb Mirza v. Attorney General*, 10-2892, dismissal order filed Sept. 22, 2010 (brief due by Sept. 7, 2010).  These more recent defaults are in addition to the earlier Third Circuit defaults that were noted in the August 2007 referral order.  Aug. 2007 order at 2 n.1.  An attorney's performance in another circuit may be relevant to the issue of whether the attorney will, in the future, be able to comply with this Court's rules and orders, even if we have no intention of disciplining the attorney for his or her conduct in that other circuit.  In the present case, since Gell's performance in this Court has clearly improved, and since the circumstances surrounding the recent Third Circuit defaults currently are not known to us, we accord them no weight for purposes of the present order.

16

the Court.  However, we do agree that Gell's sincerely-held belief that her defaults were not improper suggests that less weight be accorded to the fact that a pattern existed.

### C.  Client Vulnerability

Gell also argues that client vulnerability is not relevant to the present case, since her default strategy actually helped her clients and did not involve attorney overreaching, misrepresentation, or fraud against the clients.  However, the vulnerability finding in this case was not linked to client prejudice or attorney malfeasance.  Additionally, there is no dispute that many or all of the clients at issue were in this country illegally and subject to imminent arrest and/or deportation, that many had a limited ability to speak, read or understand English, and that some were very transient, had medical or psychological problems, or, as noted by Gell, did not "fully comprehend the effects of their actions."  Letter dated May 12, 2008 from Gell to Committee, at 4, 6, 8; Oct. 23, 2008 Transcript at 127, 165; Nov. 3, 2008 Transcript at 14, 20, 21, 27, 33, 37-39, 44; Dec. 3, 2008 Transcript at 203-04.

In short, the ability of Gell's clients to understand and oversee Gell's legal work, and otherwise protect their own interests, was significantly inferior to that of the ordinary

17

person.[5]   Thus, we agree with the Committee's vulnerability finding.  On the other hand, we agree that there is no evidence that Gell intentionally took advantage of, or that prejudice clearly resulted from, the demonstrated vulnerability.  For that reason, this factor is accorded less weight.

## IV.  Disposition

Upon due consideration of the Committee's report, the underlying record, Gell's submissions, and the additional appellate proceedings described above, it is hereby ORDERED that Gell is PUBLICLY REPRIMANDED for the misconduct described in the

---

[5] *See Flowers v. Board of Prof'l Responsibility*, 314 S.W.3d 882, 899 (Tenn. 2010) (finding clients in deportation proceedings were vulnerable under ABA Standard § 9.22(h), based on difficulties writing and speaking English, the need to move often and work long hours with changing schedules, limited financial resources, lack of transportation or understanding of the broader culture, and their need for assistance with a particularly weighty matter); *People v. Varallo*, 61 P.3d 38, 42 (Colo. 2002) (explaining that, for purposes of § 9.22(h), the attorney's "clients were exceptionally vulnerable, depending on [the attorney] to protect their abilities to reside in the United States"); *see also Aris v. Mukasey*, 517 F.3d 595, 600 (2d Cir. 2008) ("The importance of quality representation is especially acute to immigrants, a vulnerable population who come to this country searching for a better life, and who often arrive unfamiliar with our language and culture, in economic deprivation and in fear."); *United States v. Mendoza*, 262 F.3d 957, 960-61 (9th Cir. 2001) (affirming district court's finding that victims were vulnerable, for purposes of United States Sentencing Guidelines § 3A1.1, since "(1) they were in the United States illegally, which made [the defendant] confident they would not check on him or report him, (2) they were unfamiliar with United States immigration law, (3) they were not well educated, (4) they could not speak or read English, and (5) [the defendant] held himself out as sophisticated and knowledgeable in INS procedures").

18

Committee's report.  We reject Gell's request for a private reprimand, based on the magnitude of her misconduct and, to a lesser degree, her continued failure to abide by this Court's scheduling orders.

It is further ORDERED that Gell submit a status report, every six months for the next two years, concerning her practice in all federal courts in this circuit and all federal administrative agencies whose action is subject to this Court's review.  The reports must be made under penalties of perjury and submitted to the Committee's secretary within fourteen days after the end of each six-month reporting period, the first reporting period to commence with the filing date of this order.  Each report must describe each instance during the preceding six-month reporting period in which (1) a submission required by a rule or order is not filed or filed out of time; (2) an application is made, after a due date has passed, for permission to make a late filing; or (3) a case is dismissed due to her failure to comply with a rule or order.  We decline to modify these requirements in the manner suggested by Gell, and note that each report must be filed even if no defaults occur within the relevant reporting period.

Gell must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which she is currently a member, and as required by any bar or court rule or order.  Gell also must, within fourteen days of the filing of

19

this order, file an affidavit with this Court confirming that she has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Gell, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[6]

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe, Clerk


                              By:  Michael Zachary
                                   Counsel to the Grievance Panel

---

[6] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities.  While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, must be made available to any person or the public.