**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4074
_____

GENG MEI WENG a/k/a Gengmei Weng,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095 673 992)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 2013

Before: RENDELL, CHAGARES and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 11, 2013 )
_____

OPINION
_____

PER CURIAM

Geng Mei Weng, a citizen of the People's Republic of China, petitions for review

of a Board of Immigration Appeals (BIA) decision that denied her motion to reopen.  We

will deny her petition.

In 2004, upon arriving in Los Angeles without valid entry documents, Weng was

placed into removal proceedings under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Administrative Record (A.R.) 966. During a credible-fear interview, Weng described herself as a Christian and spoke of a raid on the house church at which she worshiped—a raid that led to the beating of a friend and her concomitant decision to go into hiding. A.R. 39. But Weng's asylum application told a different story: she explained that she was actually Buddhist, not Christian, and had only claimed otherwise on the advice of the smugglers responsible for her carriage to the United States. A.R. 891, 904. Instead of raising a religious claim, Weng emphasized her fear that she would be persecuted under China's family-planning rules. See, e.g., A.R. 411 (explaining that Weng was "afraid that if [she] return[s] [she] will be sterilized").

The record inconsistency was the topic of cross examination at the January 2010 merits hearing before the Immigration Judge (IJ). Weng remembered telling an immigration officer that she was Christian, but stressed that she had never been Christian and that she was simply acting on outside advice; by contrast, she emphasized that "[n]o one" had told her to express her genuine fear of sterilization in China. See A.R. 421–22; see also A.R. 408–09 (affirming the truth of the statements contained in her asylum application and her testimony at the hearing).

In an oral decision, the IJ "consider[ed] the fact that . . . [Weng] had provided at least what purports to be inconsistent, if not downright incorrect information to Immigration officials when she originally came to the United States." A.R. 303. Despite this, the IJ found Weng to have testified credibly, because "the Court does believe the

2

respondent when she says that the reason she provided incorrect information when she first came to this country was because she was told to do so by the snakeheads." A.R. 303–04. However, the IJ ultimately denied relief from removal, a disposition affirmed by the BIA in May 2012.

Weng did not petition for review of the BIA's final order but instead timely filed a motion to reopen. See 8 C.F.R. § 1003.2(c). With the assistance of new counsel, she argued that her previous attorney had rendered ineffective assistance by failing to "pursue her claims for asylum, withholding of removal, and relief under Article 3 of the U.N[.] Convention Against Torture based on persecution she would receive as a Christian." A.R. 21. Weng maintained, for example, that her 2008 baptism "could have been raised prior to the individual hearing in 2010," and that she had been a practicing Christian since before her arrival in the United States, thereby contracting her earlier testimony. A.R. 22. Attached to the motion to reopen was the (partial) record of disciplinary proceedings against former counsel per the requirements of In re Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988).

The BIA denied the motion to reopen, reasoning that 1) Weng had not established that counsel rendered ineffective assistance, but 2) even if counsel had been ineffective, Weng had not shown prejudice sufficient to warrant a reopening of proceedings. See A.R. 4–5. Weng now seeks our review of this decision.

We have jurisdiction under 8 U.S.C. § 1252(a).[1]  "We review *de novo* questions of law, such as whether petitioner['s] due process rights to the effective assistance of counsel have been violated," but we otherwise review "the denial of a motion to reopen for abuse of discretion and may reverse only if the denial is arbitrary, irrational, or contrary to law."  Contreras v. Att'y Gen., 665 F.3d 578, 583 (3d Cir. 2012) (citations omitted).  In evaluating ineffectiveness claims, we "apply the familiar two-part error-and-prejudice test," examining both the competence of counsel and whether the alleged performance shortcomings prejudiced the petitioner.  Id. at 584 (citation omitted).[2]  The standard for evaluating deficient performance is similar to the standard we employ in evaluating Sixth Amendment claims of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).  See Fadiga v. Att'y Gen., 488 F.3d 142, 157 (3d Cir. 2007) ("This familiar test . . . serves as a useful surrogate for the due process inquiry, as it measures substantially the same elements required to establish a denial of due process . . . ."); see also id. at 162 (holding that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms") (internal quotation marks and citation omitted).

---

[1] We review only the denial of the motion to reopen because Weng did not separately seek review of the BIA's earlier decision.  See Castro v. Att'y Gen., 671 F.3d 356, 364 (3d Cir. 2012) (citing Stone v. INS, 514 U.S. 386, 398–99, 405 (1995)).

[2] Because the BIA reached the underlying merits of Weng's ineffectiveness claim, we will assume that she satisfied the procedural elements of Lozada.  See Kwong v. Holder, 671 F.3d 872, 876 (9th Cir. 2011) (citation omitted).

We agree with the BIA that Weng failed to show that counsel rendered ineffective assistance. In the affidavit she submitted along with her motion to reopen, Weng pointed to two discrete instances of alleged infectiveness: first, when her attorney's paralegal did not believe that her Christianity story was truthful; and second, when counsel failed to file a supplemental I-589 after her baptism in 2008, three years after her original asylum application and more than a year before her eventual merits hearing. With regard to the first instance, we recognize that, in certain cases, the conduct of a paralegal can be probative of constitutionally ineffective assistance. See, e.g., Aris v. Mukasey, 517 F.3d 595, 596 (2d Cir. 2008). But Weng's affidavit contains little detail about the circumstances under which the paralegal ultimately rejected her claim—whether on the grounds of expediency, strategy, disbelief, or so on. See A.R. 32. An attorney does not violate professional norms by refusing to pursue a claim that will not prevail, nor does he tender ineffective assistance by choosing the path most likely to succeed. See Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000); Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Nor, for that matter, does Weng address why she acquiesced to the "misrepresentation," despite being informed by the IJ that fabricated statements in an I-589 would carry "serious consequences." A.R. 328. Her claim that she lacked "any idea" of what was in her application, see A.R. 32, is contradicted by her contemporary assertion that the I-589 was translated for her and represented a "true and correct" statement of her case. A.R. 328–29; see also A.R. 356–57 (attesting again to her

5

understanding of the I-589 at a 2007 hearing). Moving to the second component of Weng's ineffectiveness claim, we note that by 2008, Weng had repeatedly affirmed the truth of her application as originally submitted and had denied her previously alleged affiliation with Christianity. Although Weng says that her attorney "ignored" her post-2008 request to supplement her asylum application, to add a Christianity-based claim after thoroughly repudiating it would be to risk an adverse-credibility finding, and Weng has not shown that counsel's failure to so supplement the application represented a professional dereliction. Aliens shoulder the burden of showing attorney ineffectiveness, and without more information, we cannot conclude that Weng's previous counsel was ineffective under the Sixth Amendment framework of Strickland. Accordingly, counsel was also not ineffective under the Fifth Amendment Due Process analysis used in immigration proceedings. See Torres-Chavez v. Holder, 567 F.3d 1096, 1100 (9th Cir. 2009). On this record, we therefore cannot conclude that the BIA abused its discretion in denying Weng's motion to reopen.

Weng also argues that the BIA "ignored the unpublished decisions reopening cases for conversion [to] Christianity." Pet'r's Br. 16. "[U]npublished, single-member BIA decisions have no precedential value, do not bind the BIA, and therefore do not carry the force of law except as to those parties for whom the opinion is rendered." De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 350 (3d Cir. 2010). Weng avers that the cases upon which she relies are "similar" to hers, but given the broad variety of possible postures for motions to reopen, we cannot take her representation as proof that the BIA

6

impermissibly departed from its standard practice. Finally, to the extent that Weng requests remand so that the BIA may consider granting sua sponte relief, she never sought sua sponte reopening before the agency and the matter is therefore unexhausted and beyond our reach, see 8 U.S.C. § 1252(d)(1). Besides, this is not one of the narrow situations in which remand for further sua sponte consideration is appropriate. See, e.g., Pllumi v. Att'y Gen., 642 F.3d 155, 163 (3d Cir. 2011).

For the foregoing reasons, we will deny the petition for review.